# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

|  |  |
|---|---|
| HARRY McNEAL, | ) |
|         Petitioner, | ) |
| vs. | ) Case No. 12-1480-CV-W-DGK-P |
| JEFF NORMAN, | ) |
|         Respondent. | ) |

**OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner, a convicted state prisoner currently confined at the Northeast Correctional Center in Bowling Green, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2008 conviction and sentence for forcible rape, which was entered in the Circuit Court of Jackson County, Missouri. Petitioner's conviction was affirmed on direct appeal (Respondent's Exhibit E), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Respondent's Exhibit K). Petitioner raises four (4) grounds for relief. Respondent contends that Ground One is partially procedurally defaulted and is without merit and that Grounds Two, Three, and Four are procedurally defaulted and, alternatively, are without merit.

**FACTUAL BACKGROUND**

In affirming the denial of petitioner's Rule 29.15 motion, the Missouri Court of Appeals, Western District, set forth the following facts:

> On June 9, 1990, the victim was raped at gunpoint in her home by an unknown assailant while her husband was out running. Following the rape, the victim put her underwear and shorts back on, followed the assailant down the stairs, and then contacted 911. Shortly thereafter, her husband returned home and the police responded to her call.

The victim provided the police with a physical description of the assailant, and her husband, suspecting that a man he saw outside the home when he left for his run might have been the attacker, also provided a description. The victim went to the hospital for an examination, where the physician discovered the presence of motile sperm inside the victim's vagina. The physician collected a rape kit, including vaginal and cervical swabs, and drew blood. Law enforcement collected various items of bedding and clothing, including the victim's underwear and shorts. Preliminary tests indicated the presence of semen on the clothing. Semen was confirmed on the vaginal and cervical swabs.

After the rape, the victim's husband and brother asked around the neighborhood in an attempt to find the rapist. They were told that a man named Cortez Francis was bragging about raping someone, and they passed this information on to police. Approximately ten days after the rape, the victim picked Francis's photo out of a lineup, indicating that he looked like her rapist (with the exception of the beard Francis had in the photo), but she could not be 100% sure it was him. The victim's husband, however, could not make a positive identification.

Police picked Francis up for an interview on August 27, 1990. While interviewing him, police observed that he had a lisp and missing teeth. The officer conducting the interview asked the victim about these characteristics. The victim did not recall her rapist having missing teeth or a lisp.

In 1990, the crime lab conducted blood grouping and enzyme testing of Francis's saliva and compared that to the semen stain on the victim's underwear. The stain contained an antigen that could not have come from Francis; consequently, Francis could be neither included nor excluded as a contributor.

Approximately one month after the rape, the victim saw a man at a bus stop whom she thought was the assailant. She tried to turn around and follow him, but could not find him. The victim told the police that this man really looked like the rapist and that he had a lighter complexion than Francis.

By August 3, 1990, police also suspected Harry McNeal, who was then fifteen years old. Although the victim was shown a photo array that included McNeal, she was unable to identify anyone. Immediately after viewing the photo array and being unable to identify her attacker, the victim again told the police that she was positive that the man she saw at the bus stop was the rapist.

On October 26, 1990, police showed the victim a second photo array containing a different picture of McNeal. She was again unable to identify McNeal as the rapist. The victim's husband was also unable to verify that the photo depicted the man he saw on the sidewalk the morning of the rape.

The police collected a buccal swab and hair and blood samples from McNeal

2

in an unrelated case, and on October 24, 1990, an investigating detective requested that McNeal's biological sample be compared to the rape kit and other recovered evidence. For unknown reasons, the testing was not performed.

Police closed the case in December 1990 after making no arrests. A substantial portion of the collected evidence was destroyed pursuant to department policy in 1993 because the case was inactive. Copies of the photo arrays either were not retained or were lost or destroyed. The semen stain from the victim's underwear and the rape kit were retained. The shorts containing an apparent semen stain were not tested for DNA.

The crime lab began using RFLP DNA testing in 1992. Although the RFLP method was a great advance, it could not positively identify any particular individual as contributing DNA with 100% certainty, as it required a relatively large amount of good quality DNA testing and was time-consuming. In 1994, a technician tested the semen stain from the victim's underwear using this technology. The technician developed a genetic profile from the male portion of the sample and entered the unknown profile into a database. Around December 1998, further genetic markers were continually developed on the profile until the lab completed all that could be done with the RFLIP method. In 2000, a preliminary match was reported between McNeal and the unknown profile. By that time, the lab had changed to PCR-STR DNA testing, which allowed for a far greater degree of certainty regarding the identity of the contributor using a considerably smaller and lower quality sample. The PCR-STR method also produced results much faster than the RFLP method. Because of the switch in DNA testing methods, the sample from the victim's underwear had to be retested with the PCR-STR method before the lab could confirm the McNeal was the contributor of the semen stain.

In 2000, upon changing to the PCR-STR method, the lab was inundated with requests for DNA testing. Consequently, it was unable to perform PCR-STR testing on the evidence from the victim's case until 2006. Police reopened the victim's case in April 2006. A detective interrogated McNeal, but he denied knowing anything about the victim, her family, or the rape. Police collected a cheek swab from McNeal for DNA analysis. A preliminary match with McNeal was reported in January 2007, and on April 18, 2007, a search warrant was issued to obtain a second buccal swab from McNeal. A match between the profile developed from the underwear stain and from the profile developed from McNeal's DNA sample was confirmed in August 2007. The male and female profiles developed from the vaginal swab matched McNeal and the victim. McNeal was arrested on September 25, 2007.

McNeal was indicted on October 5, 2007. For the previous seventeen years, McNeal had been serving terms of imprisonment in unrelated cases. Before trial, he filed a motion to dismiss based upon the alleged destruction of exculpatory evidence. Most of the physical evidence, with the exception of a hair found on a sheet, a cutting taken from the victim's underwear, and the wooden part of the victim's vaginal swab,

3

Case 4:12-cv-01480-DGK   Document 15   Filed 04/30/13   Page 3 of 11

was lost or destroyed. Also missing were the photos, or copies of the photos, used in the arrays shown to the victim and her husband, as well as a portion of the police narrative detailing the victim's initial report. Photos of McNeal and Cortez Francis used in photo arrays in other cases demonstrated that the two individuals do not look alike. McNeal's counsel complained that the destruction of evidence hindered counsel's ability to demonstrate that the victim identified someone (Cortez Francis) who looked very different from McNeal. The motion also argued that McNeal's defense was prejudiced by the seventeen-year delay between the time of the crime and the time of the his indictment. The motion to dismiss was denied, and McNeal was found guilty of rape.

The court sentenced McNeal to a term of eighteen years' imprisonment . . . .

Respondent's Exhibit K, pp, 2- 6 (footnotes omitted).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## PROCEDURAL DEFAULT

In Ground One, petitioner claims that he was prejudiced by the state's failure to obtain an indictment before October 2007 because the state destroyed or disposed of "potentially exculpatory evidence before the indictment was filed." Doc. No. 1, pp. 5-12. Moreover, petitioner asserts a claim

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

of ineffective assistance of trial counsel in that counsel failed to file a motion to dismiss based on the state's delay in obtaining the indictment. Doc. No. 1, pp. 11-12. In Ground Two, petitioner asserts a Brady[2] violation in that the state withheld three documents from petitioner that would have revealed that prior testing was unable to exclude a possible suspect, that there was no vaginal or cervical swab available at the crime lab, and that a stain found on the victim's underwear was degraded. Doc. No. 1, pp. 13-14. In Ground Three, petitioner asserts that the state violated his due process rights and right to a speedy trial by waiting seven and a half years to arrest petitioner after he was released from prison on another unrelated conviction. Doc. No. 1, pp. 16-17. In Ground Four, petitioner claims that his right to be free from double jeopardy was violated because the state agreed in a prior case that, if he pled guilty, he would not be charged with "any further criminal charges." Doc. No. 1, pp. 17-19. Furthermore petitioner claims that trial counsel was ineffective for failing to investigate the issue of double jeopardy. Doc. No. 1, p. 19.

Respondent contends that petitioner procedurally defaulted all of his grounds for relief except for the ineffective assistance of trial counsel claim in Ground One by failing to raise them in his post-conviction appeal. Doc. No. 11, pp. 8-10. In response, petitioner claims that he did not procedurally default his grounds for relief because he raised each ground in his amended post-conviction motion except for his Brady claim in Ground Two, which petitioner contends post-conviction counsel failed to present despite petitioner's wishes. Doc. No. 13, p. 2.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir. 1995), cert. denied, 516 U.S. 1056 (1996). "If a petitioner fails to exhaust state remedies and the court to

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

5

which he should have presented his claim would now find it procedurally barred, there is a procedural default." Id.

Petitioner procedurally defaulted Ground Two by failing to assert it in his amended post-conviction motion and procedurally defaulted Grounds One, Three, and Four, except for petitioner's ineffective assistance claim in Ground One, by failing to include them on appeal from the denial of his Rule 29.15 motion. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997)(recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), cert. denied, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Although petitioner argues that post-conviction counsel failed to present Ground Two in petitioner's amended post-conviction motion, petitioner's allegation that counsel's actions provide cause and prejudice for his procedural default of Ground Two are conclusory. See Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990) ("petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified"). Moreover, petitioner fails to establish that post-conviction counsel's failure to present Ground Two in petitioner's amended post-conviction motion rises to the level of ineffective assistance of counsel. Martinez v. Ryan, 132 S. Ct. 1309. 1318 (2012) (holding that petitioner must make a showing that post-conviction counsel was ineffective under the standard set forth in Strickland v. Washington); Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). Consequently, petitioner fails to establish cause for the procedural default of Ground Two.

6

As to Grounds One, Three, and Four, petitioner fails to argue cause and prejudice for the procedural defaulted claims therein. Even if petitioner had alleged that the ineffectiveness of post-conviction appellate counsel caused his procedural default of Grounds One, Three, and Four, a claim of ineffective assistance of post-conviction appellate counsel does not provide cause excusing procedural default. See Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Martinez offers no support . . . for the contention that the failure to preserve claims on appeal from a postconviction proceeding can constitute cause.").

Petitioner also has failed to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. See Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), cert. denied, 549 U.S. 1036 (2006). As a result, Grounds One, Two, Three, and Four, except for petitioner's ineffective assistance claim in Ground One, are procedurally defaulted and will be denied.

### GROUND ONE

In Ground One, petitioner asserts a claim of ineffective assistance of trial counsel in that counsel failed to file a motion to dismiss based on the state's delay in obtaining the indictment. Doc. No. 1, pp. 11-12. The Missouri Court of Appeals, Western District, denied petitioner's claim as follows:

> "To be entitled to post-conviction relief for ineffective assistance of counsel, [a movant] must satisfy the two-prong Strickland test: (1) that counsel's performance was deficient, in that [s]he failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances; and (2) that counsel's deficient performance prejudiced [the movant's] defense." Cornelious v. State, 351 S.W.3d 36, 41 (Mo. App. W.D. 2011). "Both of these prongs must be established by a preponderance of the evidence in order to prove ineffective assistance of counsel." Id. "If either the performance or the prejudice prong of the test is not met, then we need not consider the other . . . ." Id.

7

In the context of McNeal's claim, this means that McNeal had to prove: (1) that reasonably competent counsel would have filed a motion to dismiss due to pre-indictment delay; (2) that his counsel failed to do so; and (3) that such a motion would have been meritorious, resulting in the dismissal of McNeal's case. The motion court rejected McNeal's claim on the ground that McNeal failed to prove that such a motion would have been meritorious. We agree.

At the outset, we note that, although counsel did not file a motion titled "Motion to Dismiss for Excessive Pre-Indictment Delay," counsel did file a motion to dismiss based upon the destruction of exculpatory evidence. In that motion, counsel invoked McNeal's right to due process of law under the Fifth Amendment, arguing that dismissal was appropriate, in part, due to the seventeen-year delay between the crime and the indictment. In support of the motion, counsel argued that "[a] lot of time has passed in this case where they had a number of different opportunities to bring this to a court of law prior to the time that they have." Counsel argued that "the passage of time in this case was unnecessary," and that "it has put us in a position where we are now unable to retrieve the evidence, the physical evidence in this case." Counsel argued extensively how the defense was prejudiced by the lack of physical evidence, as well as missing police reports, a missing witness, and missing copies of the photographic lineups used during the investigation. When asked during the evidentiary hearing if she had filed a motion to dismiss due to pre-indictment delay, counsel responded, "No, *not specifically*." (Emphasis added) The trial court examining the motion questioned counsel about the separate nature of her argument regarding the passage of time. The motion court noted that, although the motion to dismiss was couched in terms of destruction of exculpatory evidence, it argued bad faith on the part of the State and resulting prejudice. While counsel's motion to dismiss contained the basic facts and argument supporting a claimed due process violation resulting form pre-indictment delay, counsel's motion did not contain citation to any cases dealing with due process violations resulting *from* pre-indictment delay. Thus, it is not altogether clear that counsel failed to take the action that McNeal now argues she should have taken.

But, regardless whether counsel's motion to dismiss was sufficient to argue a due process violation based upon pre-indictment delay, McNeal's claim of ineffective assistance fails because dismissal would not have been warranted, and, consequently, he failed to establish prejudice.

> To establish a Fifth Amendment due process violation due to the tardy commencement of proceedings, the defense must show ***both*** that (1) the State intentionally delayed the filing of charges in order to obtain a tactical advantage over the accused, and (2) the delay caused substantial prejudice to the defendant's right to a fair trial in specific ways beyond simple claims that memories faded, witnesses are unavailable, and evidence is lost.

8

State v. Ferdinand, 371 S.W.3d 844, 856 (Mo. App. W.D. 2012).

Here, while there was evidence potentially supporting a claim of prejudice to the defense from the delay, there was no evidence whatsoever to support a finding of intentional delay on the part of the State for the purpose of gaining a tactical advantage over McNeal. Rather, counsel testified during the evidentiary hearing that, when she deposed the various law enforcement personnel involved in the investigation regarding the cause of the delay, she was told that it was due to a lack of funding, technology, and an abundant volume of DNA requests following the shift in testing procedures. Though counsel investigated, she found no evidence demonstrating intentional delay on behalf of the State. Counsel testified, "I did not find any witness that confirmed or said anything to me about being directed by the prosecutor's office to ignore the investigation or not reopen it." The evidence at trial demonstrated that the delay was due to technological limitations in DNA testing and identification.

In Ferdinand, we determined that delay based upon technological advances in DNA identification constituted investigative delay, which was distinct from intentional delay for the purpose of gaining tactical advantage over the accused. Ferdinand, 371 S.W.3d at 857-58.

> [I]nvestigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of "fair play and decency," a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of orderly expedition to that of mere speed. This the Due Process Clause does not require.

U.S. v. Lovasco, 431 U.S. 783, 795-96 (1977) (internal citations and quotation marks omitted).

And here, even if McNeal suffered some prejudice to his defense due to the time lapse, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Id. at 796. In short, because McNeal failed to establish that the pre-indictment delay was intentional on the State's part for the purpose of gaining a tactical advantage over McNeal, he has failed to prove that a motion to dismiss based upon pre-indictment delay would have been granted. And because "[c]ounsel is not ineffective for failing to file a meritless motion," Baumruk v. State, 364 S.W.3d 518, 529 (Mo. banc 2012), McNeal has failed to prove that the motion court erred in overruling his post-conviction motion on this basis. In any event, we fail to see how

9

> McNeal was prejudiced by counsel's failure to file a separate motion specifically identifying a due process violation based upon the pre-indictment delay when counsel, through her other motion to dismiss, presented the trial court with all of the arguments and factual assertions available to have supported such a claim, but those arguments and factual assertions were simply insufficient through no fault of counsel's.
>
> Point denied.

Respondent's Exhibit K, pp. 6-10 (footnotes omitted).

In Strickland, the Court held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.

After citing to the standard in Strickland, the Missouri Court of Appeals found that petitioner's counsel was not ineffective because she filed a motion to dismiss in which pre-indictment delay was addressed and because a motion to dismiss specifically asserting a due process violation based upon pre-indictment delay would have been without merit. Respondent's Exhibit K, pp. 6-10. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2),

10

petitioner's claim of ineffective assistance of counsel in Ground One will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

                                          /s/ Greg Kays
                                          GREG KAYS
                                          UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: April 30, 2013.

11

Case 4:12-cv-01480-DGK   Document 15   Filed 04/30/13   Page 11 of 11